**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | : : : : | **OPINION & ORDER** |
| Plaintiff, | : : | Civ. No. 10-01902 (WHW) |
| v. | : : |  |
| OBERLANDER PLANNING TRUST, by and through its trustee, NATHAN OBERLANDER, | : : : : |  |
| Defendant. | : : |  |

**<u>Walls, Senior District Judge</u>**

      Plaintiff American General Life Insurance Company moves under Federal Rule of Civil Procedure 55(b)(2) for a default judgment against defendant Oberlander Planning Trust by and through its trustee, Nathan Oberlander. The defendant has not appeared and has not opposed this motion. The motion is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

      This case concerns a life insurance policy Plaintiff issued to Defendant on April 15, 2008, to insure the life of Louis Oberlander. Compl. ¶¶ 13, 18. On or about January 28, 2008, Defendant executed the policy application, providing allegedly false and material information about Oberlander's net worth, annual income, source of funding, and purpose for the life insurance. Id. ¶¶ 13-16, 19. Plaintiff asserts that Defendant knew this information was required

NOT FOR PUBLICATION

to be "complete, accurate and honest" and that Plaintiff "would rely upon the answers recorded on the [a]pplication in determining whether Oberlander was insurable and qualified for the insurance sought through the [a]pplication." Id. ¶¶ 14, 17.  Plaintiff asserts that it would not have issued the policy or would have issued a policy with materially different terms had Plaintiff been provided with accurate information from Defendant and Oberlander. Id. ¶ 20.

On April 14, 2010, Plaintiff brought this action, seeking that the policy be declared "null, void and rescinded, *ab initio*, due to the fraudulent, willfully false and/or material financial misrepresentations and omissions" made by Defendant in applying for the policy, and due to "the lack of insurable interest at the time of the policy's issuance." Id. ¶ 1.  Defendant, by and through its trustee Nathan Oberlander, has failed to answer the Complaint or otherwise respond or appear.  Mot. for Default J. ¶ 3.  Plaintiff now moves for default judgment against Defendant.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).  The issuance of default judgment is largely a matter of judicial discretion.  Id. at 1181.  This "discretion is not without limits," as the Third Circuit's preference is "that cases be disposed of on the merits whenever practicable." Id.

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." DIRECTV, Inc. v. Pepe,

NOT FOR PUBLICATION

431 F.3d 162, 165 (3d Cir. 2005).  The court must, however, make "an independent inquiry into 'whether the unchallenged facts constitute a legitimate cause of action'" and "must make an independent determination" regarding questions of law.  Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C., No. 06-1581, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007).  Similarly, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due.  "If it is necessary to determine the amount of damages or to establish the truth of any averment by evidence, the court may conduct a hearing."  Rainey v. Diamond State Port Corp., 354 F. App'x 722, 724 (3d Cir. 2009) (citing Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994)).

## DISCUSSION

### I.      Entry of Default and Jurisdiction

Valid service of process and entry of default by the Clerk is a prerequisite to a default judgment motion.  See Fed. R. Civ. P. 55(a).  Gitty Oberlander, the wife of Defendant's trustee, Nathan Oberlander, was served with the summons and complaint at Mr. Oberlander's home on June 17, 2010.  Mot. for Default J. Ex. A-2.  Defendant is not an infant, an incompetent person, nor serving in the military.  Aff. of Alana K. Pulaski ¶ 5.  As such, Defendant was validly served.  The Clerk entered default against Defendants on July 21, 2010.  Mot. for Default J. ¶ 5.

### A. Subject Matter Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. §1332 because the case involves citizens of different states and the amount in controversy exceeds $75,000.  Plaintiff is a Texas corporation with its principal place of business in Texas.  Compl. ¶ 2.  Defendant is a trust organized under the laws of New York, with its situs in New Jersey.  Id. ¶ 3.  Its trustee, Nathan

NOT FOR PUBLICATION

Oberlander, is a resident of New York.  Id. ¶ 3.   American General alleges damages of $174,290

in connection with the policy.  Mot. for Default J. ¶ 13.

### B.  Personal Jurisdiction

Next this Court, located in New Jersey, must look to New Jersey law to determine

whether it has personal jurisdiction over the defendant.  Miller Yacht Sales, Inc. v. Smith, 384

F.3d 93, 96 (3d Cir. 2004).  New Jersey's long arm statute provides for jurisdiction coextensive

with the due process requirements of the United States Constitution.  Avdel Corp. v. Mecure, 58

N.J. 264, 268 (1971).

A district court may exercise either general or specific jurisdiction over a defendant.

Abel v. Kirbaran, 267 F. App'x 106, 108 (3d Cir. 2008).  General jurisdiction exists where the

defendant maintains continuous and systematic contacts with the forum.  Provident Nat'l Bank v.

Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  See also Helicopteros

Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-416 (1984).   Plaintiff does not suggest

that the trust's contact with New Jersey has been continuous and systematic.

American General argues that this Court has specific personal jurisdiction over the trust,

through its trustee, for two reasons: first, because the trust has sufficient minimum contacts with

the jurisdiction and second, because this Court may assert personal jurisdiction over a defendant

who committed a tortious act in New Jersey.

### 1.  Minimum Contacts

Specific jurisdiction exists where the cause of action arises out of a defendant's contacts

with the forum state.  Waste Management, Inc. v. Admiral Insurance Co., 138 N.J. 106, 122

(1994) (citing Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322 (1989).  See also Helicopteros

Nacionales de Columbia, S.A., 466 U.S. at 416.  Due process requires that personal jurisdiction

**NOT FOR PUBLICATION**

be asserted over a non-resident defendant only when that defendant has "minimum contacts with the forum such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotations omitted).

The determination of whether a defendant's minimum contacts with the forum state satisfies due process must be done on a case-by-case basis. Waste Management, 138 N.J. at 122 (citing Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460 (1986)). A court must first determine whether the defendant had sufficient minimum contacts with the forum state such that the defendant "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476. See also Waste Management, 138 N.J. at 122-123 (quoting Charles Gendler & Co., 102 N.J. at 471) (a court must weigh "the sufficiency of the contacts for jurisdictional purposes, which depends on the relationship among the defendant, the forum, and the litigation" (quotations and citations omitted)).

New Jersey courts have found that where the cause of action "arose out of the defendant's contacts within [New Jersey]" and where the contacts involved a "purposeful act" by the defendant and not "the unilateral activity of another who merely claims a relationship to the defendant," sufficient minimum contacts exist. Waste Management, 138 N.J. at 123 (internal citations omitted) ("[t]he more the defendant has purposefully directed its activities to the forum state, and the greater the benefits it has received from its contacts with the forum state, the more reasonable the exercise of jurisdiction becomes"). In Avdel, the New Jersey Supreme Court

**NOT FOR PUBLICATION**

found that personal jurisdiction existed over foreign defendant where defendant entered New

Jersey to discuss a contract with the plaintiff and the subject matter of the contract was

manufactured in New Jersey.  58 N.J. 277.  The court in <u>Lebel</u> found that personal jurisdiction

existed over foreign defendant where defendant never actually entered New Jersey, but solicited

business with New Jersey plaintiff over the phone, mailed the contract of sale to New Jersey

plaintiff, and received payment from New Jersey plaintiff.  115 N.J. 317.

 The facts that Plaintiff alleges in this case leads this Court to find that Defendant had

sufficient minimum contacts with New Jersey to be subject to personal jurisdiction in this state:

(1) Nathan and Louis Oberlander signed Part A of the life insurance application in
Lakewood, New Jersey on January 28, 2008. Louis Oberlander signed Part B of the life
insurance application in Lakewood, New Jersey on January 28, 2008.  Aff. of Frank
Vallis, Ex. 1-A; Vallis Aff., Ex. 1-B;

(2) Nathan Oberlander signed a form titled "Notice Regarding Replacement – New Jersey
Version," on January 28, 2008.  Aff. of Michael Sepanski., Ex. 2-A;

(3) Before the Policy was issued, Nathan Oberlander signed two policy illustrations on
behalf of the trust, both of which stated New Jersey was the "issue state."  Sepanski Aff.,
Ex. 2-B; Sepanski Aff., Ex. 2-C;

(4) Nathan and Louis Oberlander "acknowledged receipt and acceptance" of the Policy in
Lakewood, New Jersey on April 16, 2008.  Sepanski Aff., Ex. 2-E;

(5) A document titled "Policy Schedule" states "This is a New Jersey Policy."  Sepanski
Aff., Ex. 2-D.

 These facts show that the Defendant has purposefully directed its activities to New

Jersey.  Defendant travelled to the state on more than one occasion to meet with Plaintiff's

NOT FOR PUBLICATION

representatives and execute application documents and acknowledge receipt and acceptance of

the Policy.  By engaging in activities within New Jersey and applying for a New Jersey insurance

policy, Defendant sought and gained the benefits and protections of the State's laws.   Moreover,

the cause of action in this case directly arises out of these contacts with this State.  As such,

Defendant's minimum contacts with New Jersey are sufficient for this Court to exercise personal

jurisdiction.

### 2.   Fair Play and Substantial Justice

Defendant's minimum contacts with the forum satisfy the requirement that "maintenance

of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co.,

326 U.S. at 316 (quotations omitted).  Because of the close proximity between New York and

New Jersey, trying this case in New Jersey does not inconvenience the New York-based

defendant here.  See Halley v. Myatt, 2010 WL 1753110, at *8 (N.J. Super. Ct. App. Div. May 3,

2010) ("[T]rying defendant, a New York resident, in a New Jersey court, presents no special

burden to defendant since the two states are contiguous"); Avdel Corp., 58 N.J. at 273 (finding

that "there is certainly no special inconvenience [to try the case in New Jersey] to [New York]

defendant since the two states are contiguous").

## II.    Liability

The requirements of entry of default and jurisdiction satisfied, the Court turns to the

merits of the complaint. The Court accepts as true the allegations as to liability in the Complaint

as true and admitted by the Defendant.  See DIRECTV, 431 F.3d at 165.  The Court must now

determine whether Plaintiffs' allegations are factually and legally sufficient for the relief it seeks.

See Days Inn, 2007 WL 1674485, at *4.

NOT FOR PUBLICATION

In New Jersey, an insurer "may rescind a policy for equitable fraud where the false statements [provided in the policy application] materially affected either the acceptance of the risk or the hazard assumed by the insurer.  Ledley v. William Penn Life Insurance Co., 138 N.J. 627, 637-38 (1995).  See also N.J.S.A. 17B:24-3(d).  Additionally, "an insurer need not show the insured actually intended to deceive" in order to rescind a policy.  Ledley, 138 N.J. at 635.

Here, Defendant provided false statements in its life insurance policy application that were material to Plaintiff's issuance of the Policy.  Compl. ¶¶ 13-16, 19.  Had Plaintiff been provided with accurate information as to Defendant's net worth, annual income, source of funding, and purpose for the life insurance, Defendant would not have issued the Policy or issued it with materially different terms.  Id. ¶ 20.  Plaintiff's allegations are factually and legally sufficient to declare the Policy issued to Defendant null, void, and rescinded, *ab initio*.

**III.     Damages**

Plaintiff is seeking an equitable setoff in an amount equal to the damages it has suffered.  Mot. for Default J. ¶ 11.   Plaintiff seeks "to retain the premiums paid for the [p]olicy as an offset against the damages, fees and costs it has incurred as a result of Defendant's conduct" to obtain "equitable restitution of the parties to their pre-contract positions."  Id.  The total amount of premiums received on the policy was $174,290.00 and the damages incurred in payment of agent commissions and bonuses on the policy was $180,955.10.  Id. ¶ 8, 9.  The Court grants the Plaintiff's request to retain the premiums received on the Policy in the amount of $174, 290.00.

**NOT FOR PUBLICATION**

## CONCLUSION

IT IS ORDERED that the Plaintiff's motion for default judgment is GRANTED in the amount of $174,290.00.


**/s/ William H. Walls**
United States Senior District Judge